Item 13.1.10 and 13.1.82, Wendham Vacation Resorts, Incorporated v. Timeshare Advocacy, International and all, oral argument to be shared by Dan Collins and 50 minutes for the advocate. Mr. Oakley for Dan Collins. Morning, Your Honors.  If it pleases the Court, I'm Greg Oakley and I represent the appellants, Timeshare Advocacy, International and Sean Austin. Ms. Lindsey Smith-Hyde represents the appellant, Chuck McDowell, and we're splitting our time and if it pleases the Court, I'm going to discuss the issues of the standard of review and the claim for attorney's fees under the Tennessee Uniform Trade Secrets Act, or TUTSA, and Ms. Hyde is going to discuss the other issues, but I'll be happy to answer any questions about any issues that the Court may have. As the Court knows, this is an appeal of the District Court's decision denying our motion for attorney's fees under the fee-shifting provisions in TUTSA and the Tennessee Consumer Protection Act, and we recognize that the biggest obstacle that we have to a reversal of the District Court's decision is the standard of review that is applicable to fee award decisions, which this obviously is, and the standard of review is abuse of discretion, whether it's the federal standard or the state standard, and there was some suggestion in our original brief that the state standard of review would apply, but Wyndham contends there's not much difference, is there? It just doesn't matter. Well, Your Honor, I believe that there is one material difference, and that is that according to this Court's decision in the automotive support group case that I cited in my brief, when this Court is reviewing a District Court's fee award decision, it applies abuse of discretion standard, but the District Court's legal analysis and statutory interpretation are reviewed de novo, and there is some aspects of the District Court's decision in this case that... Doesn't the state have the same rule? If it does, I'm not aware of it, Your Honor. Okay, well, anyway, keep going. All right, we get that rule. So the standard of review is abuse of discretion, but that does not mean that the District Court's decision... No. Okay, then I'm going to move on to... How about this point? I mean, two things that seem a little odd about your position are, one, you know, this complaint had several claims, and you lost one of those claims as a matter of law, right, the breach of contract claim. Yes, Your Honor. That's not been appealed, so we have to assume it's a pretty fair assumption that that was a legitimate claim, right? Yes, Your Honor. Does the record show what damages that led to? Your Honor, that claim was a claim for breach of a settlement agreement that my client had entered into with Wyndham when Wyndham first approached him, and what happened was that he agreed not to work on behalf of Wyndham owners, and he unintentionally sent... Does the record show what the damages were for that? Yes, Your Honor. The damages were, there was a liquidated damages provision in the settlement agreement. It was $5,000 per incident, and he... So just tell me, what's the answer? Total damages were... $35,000. $35,000, okay. Yes, and that was decided on summary judgment. Right, okay, so that's not appealed, so there was some merit to some part of this complaint. That would be thing one. Thing two is that it gets past summary judgment, which is just a funny... Now, I realize you have some explanations as to why it got past summary judgment, but I don't know, it just seems funny to me to say it's sanctionable, the claim is essentially sanctionable, and it gets that far along. I mean, it seems either your side wasn't paying enough attention to how weak these claims were, which puts a little responsibility on you, or shows the district court wasn't very good, but you can't, the district court's not responsible for their complaint. I mean, it did get far enough along to get to this final disposition, so how do you deal with that? Well, Your Honor, unfortunately, although the defendants should have, there was no motion for summary judgment filed in this case, so, I mean, it did... That's because you guys had all these, your side, and I know you guys weren't the lawyers at the time, is that right? That's right. But it seems to me what happened there is that there was, for whatever reason, counsel for the defendant dropped out, and there was a deadline that was, there was an extension given at that time, the deadline passed, there was an agreed motion, which the district court denied, but it's hard to say it's an abuse of discretion. Maybe it is, maybe it's not. But the point of the matter is, how can you tag the plaintiffs for missing that deadline? Well, we're not trying to tag the plaintiffs for missing that deadline. Because if you had filed a summary judgment motion at that time, based on what we see in the evidence, you probably would have won. Your Honor, I'm sorry. And how can we tag them for all the damage that happened after that, when all the fees that you guys incurred after the summary judgment stage, when if the testimony that came out at trial came out at summary judgment, I have to assume it would have, you probably would have won. Well, Your Honor, frankly, I don't believe that we would have won summary judgment in this particular case. Just because of the ruling you got on DV, right? Yes, Your Honor. But how does that work? I mean, how does it work that, I mean, you're making the point that Judge Haynes is just getting this stuff wrong. That must be your point. But isn't it weird to, I'm having a hard time completing the sentence that has in it, the district court's decisions were so bad that I would actually say it was sanctionable. I mean, why isn't he getting sanctioned? I don't understand this. Why them? I mean, he's the one that's making the mistakes. He's the one generating the fees. It's not them. Yes, Your Honor, but he's not the one that filed this lawsuit. Knowing that they did not have any claim for a violation of the Tennessee Uniform Tracer Act. Let's put it this way. Why would you get, maybe you do get fees for discovery if you're right. Let's just say you are right about all this. But I guess I'm just asking Judge Dowd's question in a slightly different way. Why would you get fees after the time for summary judgment motions? That just seems funny to me and it seems like the answer of, well, that wouldn't have changed anything because this district court judge was just very tough on us. That just seems to break the, seems almost like a proximate cause problem. You had a last clear chance and you missed it. Well, Your Honor, the best way that I can think of to answer that question is that there's no requirement that a defendant file a motion for summary judgment. And we certainly weren't required to file a motion for summary judgment in this case. I get that, but that's kind of the premise of the question. The premise of the question is, okay, you're not required, but isn't it funny to collect fees after a point in which you could have stopped the problem? In other words, I think for you to get fees, we have to assume you really are right about all this. And to forget the district court decision, assume you really are right, and someone would have recognized it. They would have recognized it at summary judgment, right? Well, one would think so, Your Honor. One would also think they would have recognized it at Rule 50 motion. You get fees before but not after. How bad is that? How bad is that? That's not good for us. Weren't there a lot of fees generated with discovery? Most of the fees, I believe, Your Honor, were generated in association with preparing for and trying the case. Is that right? The district court in denying your directed verdict motion, as I've read the transcript, I just want to see if there's something we should add to this. The sole basis that I can see for the reason why the district court denied your motion after you demonstrated the complete, in your view, lack of evidence in support of these claims, was, quote, under Tennessee law, whether an information constitutes a trade secret is a question of fact, period. Was there any other explanation that you're aware of? For why the court denied the motion? Yeah. I'm not. If there's more, if your opposing counsel thinks there's more, but if the district court's thinking here was that an issue is a question of fact precludes judgment as a matter of law, that would seem to be a problem. And that would have precluded summary judgment also. Okay. Under the court's reasoning, if it's a question of fact, and the court believed that based on the testimony at the trial that there was enough evidence in the record to make that question of fact go to the jury, then there's really no reason to believe that a summary judgment would have been. . . Let me just try. . . Maybe I'm the one that's just not following this. I'm just trying to work through this. But it seems like you have two options here. You can assume option A is forget who this district court judge was, and the way we look at this is we assume a district court judge that gets it right. So that's one possibility here. If we take that assumption, it seems to me pretty fair to put some responsibility on you for not doing something earlier to stop the running of fees. So that's possibility A, and you see why I think that's problematic. Yes, Your Honor. Possibility B is we credit what the district court judge did in this case, and if we do that, we have to honor his summary judgment. Well, not that ruling, but the ruling is a matter of law later on, and that's hurtful too. I mean, I guess I don't see how the fact that the district court judge made a mistake or wasn't good or wasn't hearing you makes a difference. It seems like we're stuck. We either assume the, quote, good district court judge, the one that would have seen through all of this, in which case you're responsible for not solving the problem earlier, or we assume we give him the benefit of the doubt and he ruled as he did, which both scenarios help the other side at least after the time of summary judgment motions. So what am I missing with that way of thinking about it? I understand what you're saying, Your Honor, but I think that clearly we have argued that the district court did not get it right, that he completely got it wrong, and under the court scenario, we had to assume some responsibility for not solving the problem earlier, and I certainly understand the court's position on that issue. On the other hand, as I think that I've tried to say, there's no indication that filing a motion for summary judgment in this case would have done anything but add to the fees because the district court would have most likely denied the motion, and then we would have had to proceed to trial anyway. You're making basically a futility argument. With respect to not filing a motion for summary judgment, I am, Your Honor. And I asked for permission to file a motion for summary judgment, and the court denied it. It was unopposed, as I recall. Well, no response was filed, but the court denied it. Did you file that before the SJ deadline? It was after. What happened was by the time that I got involved and was able to figure out everything that was going on, it was too late to file a motion for summary judgment. We were scheduled for trial in December or maybe January, and the trial got continued because there was an emergency health issue for a family member of the plaintiff's counsel. And during that interim period, that's when I filed the motion. Since the trial got continued, I said, okay, well, now here's a chance that we have. Instead of spending all this money to go to trial, we can try to get rid of these claims on summary judgment. So I asked for permission to basically extend the dispositive motion deadline and to allow us to file a motion for summary judgment, and the district court denied it, even though it was unopposed. So although, you know, there's no question that I think a summary judgment motion should have been filed in this case, I don't think it would have been granted, number one. Number two, we did try. So why don't we, I mean, I'm going to give your co-counsel some time. So if you don't mind, I mean, unless, well, I think we're going to get to keep talking about the same points because I'm guessing both of you are equally able to deal with all of it, right? Well, I'm sure that she's more. She's even better. Yeah, of course. Okay, let's get her up here. Let's get her up here then. That's great. Thank you. You guys will get your full rebuttal, and the appellee will be flexible with time for them too. May it please the court, I'm Lindsay Smith-Hyde, and as Mr. Oakley said, I represent Charles McDowell, but of course our arguments overlap. And I'd like to point out about the motion for summary judgment, I support Mr. Oakley's statement or futility argument, like you said, Your Honor. There's no reason to believe it would have been granted. And, in fact, in an identical matter that's currently ongoing, a motion for summary judgment was denied. Is there any evidence in the record that supports the notion that that's why the summary judgment motion wasn't filed on time? There's no evidence in the record, Your Honor, no. But let me also just state throughout there. Plus, it's kind of a pretty hard thing to say. I mean, would you really want us to say? Well, yes, you would. The answer is yes. You would like us to say this in an opinion. Now put yourself in my position. Do you think I can really say in an opinion? Well, of course, it would have been futile to file a summary judgment motion in front of this judge. That's what you're asking us to say. Well, I think that what you're saying is that defendants are required to file motions for summary judgment. If they think the claim is so frivolous that it's sanctionable, yes. But there were disputed facts. There were disputed facts. Well, if they're disputed facts, that's fine. How can you say that? Because I think what you said in your brief here is that there are no facts. Yeah. Go ahead. Let me just try a slightly different thing, which I just want to make sure we deal with here. Judge Haynes had an alternative ground, okay, right? This was the idea that you couldn't separate out the different types of legal work and the different claims. For what it's worth, I'm a little skeptical of that theory, but it was an alternative ground. And I think the way this works, I mean, I think if you had a, just my way of thinking about this is if you had a rule that said, okay, your notice of appeal must identify the three issues you are raising and you, or all of the issues you're raising, okay? And after the notice of appeal is filed, one realizes that there's an alternative ground in the district court decision that's not covered by the identification of the issues in the notice of appeal. I'm not sure, I don't understand why I would say no briefing, case dismissed. You know, the appellant has to change the judgment. That's the whole point. We review judgments, not opinions, and so the judgment stands with that ground. And so what I'm struggling with, it's harsh, particularly since I think you're probably right on the merits, but I'm really struggling with why that's not really problematic here. With why we didn't file a motion for summary judgment? No, no, no. I'm making the point that he had an alternative ground for denying fees. The alternative ground was I can't separate all of this stuff out. It's all interlinked, okay? That was not addressed. Fees. Fees. That was not addressed in the appellant's briefs. Appellee permissibly, correctly points out there's an alternative ground. You then address the merits of the alternative ground in reply. And I'm just saying I just think that's too late. You have to change, the appellant has to change the judgment. And if there's an alternative ground for the judgment not challenged in the appellant's brief, I'm just really struggling what we can do about it. Obviously this is not a question that I anticipated. Well, okay, the answer is we have some discretion and you want us to exercise it. Okay, good. Keep going. Keep going with your, okay. I'd like to point out to you about the summary judgment that was awarded. My client was not part of that. My client did not, there was no judgment entered against Mr. McDowell. Okay. That was strictly against. Was Mr. McDowell part of the preliminary injunction, the TRO? Were the TRO and the preliminary injunction entered against all the defendants? I believe so, Your Honor. I guess one way of looking at this case, both the statutes are permissive, right? It's not mandatory. If you make these findings about bad faith or frivolous, you must. I think they're both permissive, right? Well, I would argue that there's one level of discretion. And once you find that the action was frivolous, meritless, or brought for the purposes of harassment, then you award fees. You decide how much to award. Doesn't it say may? It does say may. But my position is that the statute is not going to order the court to, they're not going to say you shall award all attorneys' fees. Whoa, whoa, whoa. It does sometimes. There are statutes that do that. Yes, there are statutes. But because of the discretion, I don't think that the code is going to say you have to give all the fees because there is a discretionary part of that. But there would be no point in having the statute if the judge could say, oh, sure, this is frivolous, meritless, and brought for the purposes of harassment, but I don't feel like you should get fees. Let me try another angle of that, though, because I think this, here's just sort of district judge look back here, look at the whole picture. And so here's what you see. At the beginning of the case, they had you guys in the run. They got a TRO, they got a preliminary injunction, and they won summary judgment on one claim for which somebody on your side paid $35,000. I guess it's Mr. Oakley's client who paid the $35,000. Then at the end of the case, you had them on the run. You creamed them at trial. In the meantime, some things happened that weren't particularly the way you'd like to see things. Now, maybe you're going to say that this judge didn't want you to file a summary judgment motion because he would have had to wrongly deny it. But in the middle there, at least we look at that and say, geez, summary judgment, if your argument at J&OV is there was no evidence, you should have made that argument at summary judgment. So if I step back and I look at, they had you guys in the run at the beginning, you guys had them on the run at the end. In the middle, a whole bunch of stuff happened. Some of it shouldn't have happened. Some of the things should have been done differently. A pox in everybody's house, no fees, everything stays where it lands. Isn't that a way you could look at this because the statute's permissive? If it said shall and they were in bad faith, then shall is shall. But if it's may, couldn't a district judge exercise discretion and say, everything stands where it stands. This case is all screwed up. Well, both parties had the same evidence. And my client and Mr. Oakley's client are operating on a much lower attorney's fees budget, much, much, much lower. And they would have had to cash in all their chips to make a motion for summary judgment. And then if we had lost, which we probably would have, then they would have lost all their money and either I don't understand that because the J&OV motions are the same. You had to do the work either way. I don't understand how summary judgment motions are different from J&OV. It's the same argument. But by the time a J&OV motion was made, we were in court and we had done all of the trial preparation. So that was all wrapped up together. I mean, it was a different standard. And back to what I was saying about the plaintiff's evidence, they had the evidence too. They also could have dismissed their case. I don't understand why the burden should be shifted to the defendant. I don't think it should be. The plaintiff is the person who brings the case. If at the close of discovery they don't have a case, why shouldn't the burden be on them to dismiss their case at that point? Well, if only it worked that way. Well, do we have any other questions? Okay. Thank you. You guys get your full rebuttal. And Mr. Shockley, we'll hear from you. Thank you. May it please the Court, Gary Shockley of the Tennessee Bar for the Appalee Wyndham Vacation Resorts. As the Court is well aware, there's a single issue presented by these appeals, and that is did the Court abuse its discretion in denying this motion for fees? There are at least three independent and entirely sufficient reasons that that question should be answered negatively. There was no clear error in the Court's finding that there was no bad faith here, and that's the standard of review under the Degussa case. Clear error, bad faith is a finding of fact. Even were that not the case, there is no showing of an abuse of discretion here. As Judge Dow's questions have just pointed out, even when bad faith is found, the award remains discretionary. There are a lot of facts here that would weigh against that. If there are two ways to read the evidence, choosing one cannot be an abuse of discretion. And finally, again, as your questions have pointed out, even were that not the case, the defendants have failed to establish the reasonable amount of fees incurred on the fee-shifting claims here. Did you guys try to seek fees on your breach of contract victory? We did not, Your Honor. But I take it there's no statute that would allow it? There's not a statute that would allow that. I'm sorry, go ahead. Let's talk about your first reason. One of the elements of your trade secrets claim was misappropriation, correct? That's correct. And the statute defines that as disclosure or use of a trade secret in a way that's impermissible. Correct. Not just existence, disclosure or use. Now, as I understand the record, I want to give you a chance to correct me. Your 30 v. 6 witness, for all purposes, was asked, well, what are these trade secrets in particular and how are they used? The answer was, I don't know. Interrogatories were sent to you guys. Same question, answer, I don't know. The answer actually just recited what was in the complaint. I think that's right. Yeah, and there's no detail. Multiple witnesses at trial asked the same question. Response is a variation on the same theme, I don't know. So let's just start with this point. It seems to me that there is zero, literally zero, evidence of misappropriation, that element, in the record. Really the heart of that claim. Misappropriation as opposed to existence. I want to give you a chance to respond to that.  Thank you, Your Honor. I would respectfully disagree with the characterization of the record. In the discovery responses, there was a description of what Wyndham considered to be its trade secrets here. If those answers were insufficient, then the response is either a motion to compel, which was not filed. The answer was the list? Is that the answer? That's right. The answer was what the complaint said, which they already had, correct? That's correct. Why would you think that's a sufficient answer when they already had the complaint? Because it complies with the statute. What the statute defines is a compilation of information in any form, a plan, a method. Okay, I understand. Now, again, it seems like we're conflating existence with misappropriation. What's your evidence of misappropriation? Because they used that method plan that they learned about sales. They used that in working with Wyndham customers to try to cancel contracts. What's the record evidence? Exhibits 4, 5, and 6. And what are those? Those are the letters. What in the letters shows the use of a trade secret? None of your witnesses could say anything about the falsity of the letters. Let me address two things there if I may, Your Honor. Sure. In Mr. Monowick's testimony, he testified that the letters were word for word the same. Right. That they used words that in 25 years of working with consumers, with Wyndham owners, he did not see consumers use. Right. That they were, quote, insider terms that one would only know if one had gone through the training, including sales compliance policies that had been addressed as being confidential, giving a competitive advantage in the testimony of LaBelle and Monowick. Which term? He talked specifically about the terms rescission. He talked about the relationship between RCI and Wyndham. He identified a number of things. Which is public fact. I mean, the ownership of those companies is publicly known. Absolutely. How is that a trade secret? But what is not a public fact, what is not a public fact, is that under the confidential sales compliance policies, that those are red flags, that if you want your contract rescinded, say these magic words. Right. It's more likely to happen. That is part of that method. Where is that testimony, the red flag testimony? It's in Monowick's both direct and cross-examination. Do you know, I mean, I've never seen any of this. I mean, frankly, Mr. Oakley in his brief kind of throws down the gauntlet and says they can't come back, they're not going to come back with any specific evidence of misappropriation. And unless I missed something in your brief, all you do is quote the district court's utterly conclusory statement, which goes only to existence, not to misappropriation, in denying the fees and the fee order. Your Honor, again, maybe we read the transcript differently. I read the transcript. Tell us the places in the transcript to look. Just, you know, you may not remember pages, but that would be most helpful so we can, if you think there's some evidence there that shows the use. I will, Your Honor. I believe in the Monowick testimony at pages 1858 through 95 of the transcript. 1858 to 95. 1858 to 95. He discusses the sales compliance policies, the violation of which could trigger a rescission and a refund, and why he believed from reading those ghostwritten letters, no question those letters were ghostwritten by TAI for former Wyndham customers, that those were written by somebody who had knowledge of those, he believes, confidential trade secret sales compliance policies and the sales compliance methods, not language he'd seen in 25 years from other consumers. Okay. Well, we can take a look at that. Now, the district court's actual holding on this point in denying fees as to the trade secret claim was that, whoops, darn it. Here we are. Quote, the record reflects testimony related to Austin and McDowell's access to confidential owner information. That's it in terms of a factual predicate for the finding. Whether that's an accurate statement so far as it goes with regard to the existence element, I suppose one could argue about. I mean, supposedly this was password protected and they didn't have a password. But there's nothing here about misappropriation, nothing, which is the core element of your claim. So why isn't this an abuse of discretion when these folks weren't even heard in their argument, not only on JNOV, but here in saying, Your Honor, there's no misappropriation evidence. Answer, well, they had access. Why isn't that an abuse? It's not an abuse, Your Honor, because they did have access. That's a correct finding in the record. They didn't have unfettered access. They did have access. And the jury could have concluded, based on the fact that there was admittedly a violation of the settlement agreement in continuing to contact Wyndham owners, that 40 percent, up to 40 percent of TIA's business was Wyndham owners. The jury could have concluded that was circumstantial evidence supporting an inference of use of that information that they had access to. The only evidence regarding how they got the four owners who wrote the letters in this case was that those folks came to TIA via their website. And Mr. Monowak, and I'm not sure if others were equally unknowledgeable, he had no reason, he said he had no idea whether these folks ever contacted those owners. He did, Your Honor. But whether those contacts were directly from those consumers to the defendants or the other way around was a question of the defendant's credibility. Defendant, a defendant, two defendants, TIA and Mr. Austin. But you had no evidence is my point. The idea of what you just said, there's no evidence that they were contacting owners. We had no direct evidence. With confidential information they took. We had no direct evidence. There was circumstantial evidence from which the jury could have concluded if 40 percent of their business is Wyndham owners, that that's not a coincidence. How'd they get the other 60 percent? I assume they got the other 60 percent through their billboards, through the numerous websites they had, through the seminars they held. I mean, the circumstantial nature is starting to evaporate. I mean, there's nothing. Obviously, Your Honor, the jury didn't draw that inference, obviously. They came back in 45 minutes. They did, but the trial itself lasted a little more than a day. I don't think 45 minutes tells us much. It tells us we lost. We had an unsuccessful claim. That doesn't mean it was an unfounded claim. There was evidence, as the judge concluded, on the motion for directed verdict, which is discussed in detail in the transcript, from which the jury could have reached a conclusion that there was a trade secret and that it was misappropriated. When he says that's an issue of fact, I think most of us would understand that to mean there is evidence sufficient to support a jury finding on these elements. It's a question for them. He says that many times in the discussion. It's up to the jury whether that's true. He never says anything about why there's a genuine issue of material fact. He simply says this is a question of fact. Well, you know, you've got to read it in context. We can't take it apart here. I think that's right. And I think an experienced district court judge, who in denying a motion for directed verdict says that's a question of fact, is saying there's enough evidence here, in my view, for a jury to reach that conclusion. How about the Consumer Fraud Act claim? I mean, as I understood it at trial, it was based on the letters. Is that right? It's correct. So you guys had the letters before you filed the complaint. And then if I look at the trial testimony, there isn't a word about a misrepresentation, and it's sort of like Judge Ketler's question earlier about what's the, you know, misappropriation is the element on which a Trade Secrets Act claim will turn and misrepresentation is the element on which a consumer fraud claim will turn. And as I read the trial testimony, there's nothing there. No one could say that there's anything in that letter that was in your client's possession before the lawsuit was even filed constituted a trade secret. Why doesn't that claim fall on the, you know, side of frivolousness and bad faith? If there never was a single ñ the same people who testified at trial could have looked at that letter before you filed a complaint and said, okay, what's wrong with that letter? And the answer is, we don't like it. Well, it's certainly true they didn't like it, but it goes beyond that. The Tennessee Consumer Protection Act prohibits any unfair or deceptive act or practice in connection with any trade or commerce, unfair or deceptive. Now, there was evidence in there from which the jury could have concluded it was unfair because the defendants were using confidential proprietary information, which they had agreed in their salesperson's agreement was confidential, was valuable, was proprietary, and that they would not use to aid these people ghostwriting their letters, using those magic words to try to rescind their contract. The jury could have concluded that was unfair. I didn't see anything. Maybe I missed it about this unfair angle for this claim. I thought it was all about you were arguing the letters contained falsities. It's unfair or deceptive. I know the statute says that, but I'm just talking about the way this case was prosecuted. What did the jury instructions say on this? The jury instructions gave the standard Tennessee Consumer Protection Act instruction, which is unfair or deceptive act or practice, and my recollection is that it referenced the letters. Now, again, was there direct proof? Well, there was proof that the letters were written by TAI on behalf of Wyndham owners and that TAI's involvement was not disclosed. Is that deceptive? Obviously, the jury found it was not. Is that unfair? The jury found it was not. Deceptive to whom? Deceptive to Wyndham. Well, I thought, was your theory for the reason why Wyndham Corporation can bring a consumer claim against these folks, I thought the theory was a third-party standing, that you're standing in the shoes of the actual consumers who are working with them. Is that an accurate understanding of your theory? I don't think so, Your Honor. So you guys are the consumer? That's your theory? We are not the consumer. We are a person who has been injured in our money or property by an unlawful act under the Tennessee Consumer Protection Act. The Act, Section 109, gives that right of action to any person injured who suffers a tangible loss due to a violation of the Act. Now, again, I just don't see where you actually argued any unfairness theory at any point in this litigation as opposed to a falsity theory. Am I overlooking something in the record? I don't think you are, Your Honor. And as to falsity... I'm not sure that issue was articulated in the detail that I'm articulating it here today. Okay. I appreciate your direct response. As to falsity, I mean, the district court in denying fees on this claim, again, we've got one sentence for findings as to each claim. Here, for this one, quote, And the plaintiff introduced several of the alleged false letters into evidence. So it seems like the district court thought there was maybe some evidence to the effect that there were falsities in the letters. Is that your understanding of what the district court is saying? That is what he's saying. And he's citing Monowick for this. Yes. Now, if one reads Monowick's testimony, Monowick, on this point, as on so many others, says, I don't know. I don't know if there are any falsities. Why isn't that clear error? It's not because what Monowick also says is, when we got these letters in, we originally said, we better give these people refunds. Then when we got enough of them in, we figured out, wait a minute, somebody's writing these letters for these people. Right. So we stopped doing that. We stopped doing our own investigation, and we said, you're going to need to give us some more information on this, because this is a form letter that's come in over the transom. And he says, after that, we didn't get follow-up from those people. All right. Well, that doesn't answer why there's reason to think there was a false statement in the letters. Now, you got the letters. This wasn't something you had to track down. You received the letters. You all know your business. It would have been the easiest thing in the world for you to identify something false, a sentence in the letter that's false. Monowick can't do it. Nobody else does it. You don't even argue it in closing. So you have a false statement in the letter theory, and you never offer any evidence, any explanation, ever. And these folks got to try the case. And the district court, it seems, just totally misunderstands the record. So, again, I mean, why isn't that clear error? I don't think it's clear because I don't think the district court misunderstood the record after managing the case for two years and listening to all the testimony. Again, what Monowick says is when we said to these consumers sending these form letters, we're going to need more information. They didn't hear from them. Now, the jury could— What does that have to do with whether the letters are false? I mean, is the falsity who the author was? No. That certainly was false, who the author was. I mean, but I'm just—that's not the theory, though. But the falsity was also— Did this ever actually happen? Are all of these complaints that these consumers are sending, which all look pretty much the same and which all just happen to be the things that increase their chances of getting a rescission, did they actually happen? They originally gave refunds, and then they said, wait a minute, these are form letters. Maybe this is not happening to each one of these people, the exact same thing. So they said, let's get some more information. Now, again, obviously, the proof was insufficient to convince the jury that there's no question about that. We lost. We lost fair and square. I mean, to this day, nobody can point to what sentence in the letter is false. And it seems like you think that the fact that these folks are coaching customers is illegal. And it is if, by doing that, they are using information they gained that's covered by their salesperson agreement or that constitutes a trade secret. Right. Okay. That's it for me. Good. Thank you. Thank you, sir. I appreciate your patience. Thank you very much. Thanks a lot. So, I don't know, Mr. Oakley, you look like you're ready to get up. I'll try to be brief, and I would like to start with the issue that the court was just discussing, and that's the TCPA claim. Not only was there zero evidence presented at trial that any allegation in any of these letters was false in any way, Wyndham objected when we tried to ask their witness whether the allegations in the letters were true. Wyndham objected and said that it was hearsay, and we had a discussion with the court, and then the court sustained the objection, and when I asked for clarification, the court made it clear that I was not allowed to ask the witness questions regarding whether the allegations in the letters were true. At the time, the— This is back to your theory of sanctioning the district court judge. Well, Your Honor, I mean— But also, does it matter if he knew they were true? Isn't the better question, do you have any knowledge that these are true? And he would have said no, and he would have said, that's my point. Thank you. Fair point, Your Honor. But— Again, I'm just trying to make sure I'm getting this. If you have, just for the sake of argument, form letters saying similar things over and over, ostensibly by different people, why am I missing something to think there's not an inherent falsity in that? Well— I mean, go ahead. Well, I mean, first of all, Your Honor, the letters don't say the same thing over and over. They're different allegations. They're specific allegations regarding specific salespeople, things that were said— But they look like they're coming from the same source. That's fair enough, right? Well, they were coming from the same source, Your Honor. Okay. So if you look like there's someone behind this letter-writing campaign, and it's not actually the individuals in charge of this that are signing the letters, I don't know, it doesn't— My first reaction would be to wonder whether everything in the letters is true. That would be a fair reaction, Your Honor. But there's no evidence in the record of this case that any of the allegations in the letters were untrue. And if they wanted to put on evidence that the allegations were untrue, they were certainly capable of doing so. And not only did they not, they objected to us asking about the allegations. And, you know, there's nothing in the record about whether the allegations are true or false. So even though maybe it might have raised suspicions about whether or not they are true, that's not the question. That's before the court. The question that's before the court is whether there's any testimony at this trial or anywhere in the record that the allegations in these letters were false. And it's important, I think, to note that at the time that I objected— excuse me, that Wyndham objected to me asking questions about the veracity of the allegations in the letters, the TCPA claim was not that there were misrepresentations in the letters. That version of the claim never appeared until we were arguing our Rule 50 motion. What was the earlier iteration of this? The Consumer Protection Act has a specific list of enumerated acts that constitute unfair and deceptive practices. And one of those is the misuse of trade secrets. And the complaint—the TCPA claim in the complaint in the pretrial order and everywhere until the end of the trial— was that the TCPA violation was the misuse of trade secret information. Now, I was able to persuade the judge that the preemption provision of TOOTSA preempted several of the other causes of action that they had alleged. And this was their way of getting around TOOTSA preemption for the TCPA claim. It never existed before that time. But as the court pointed out, they didn't argue it in their closing argument. And in all of their briefs, although we have challenged them, we challenged them in the fee motion, and in these briefs to come up with one scintilla of evidence that one of the allegations were— Let's just say a case. So on your side, you guys have your ducks in a row right from the beginning. You get this thing. You file a motion to dismiss. You ask for clarification. You just do every right thing. And for whatever reason, the district court judge does the wrong thing at every turn. So he should grant the motion to dismiss. He doesn't. He should grant the motion for summary judgment. He doesn't. He should grant the motion for JNOV. He doesn't. I'm just really struggling with how women have fees in that case. That's the thing I just can't get my arms around. I mean, it's true. The district court judge made just one mistake after another in the case, and happily it ended well because the jury got it right, and the judge didn't take that away from you. But I don't know. I can't tell if it's a logic point or I'm just having a hard time. I'm going to guess it's hard to find cases out there where district court judges, you have a ruling on the JNOV dignifying the plaintiff's theory, rightly or wrongly, but dignifying the darn thing. I just don't think there are a lot of cases out there that when the court of appeals is then going to say, you know, I've got fees. Actually, Your Honor, I think that I cited a case in my brief, and if I didn't, I cited it in the fee motions for the proposition. Great. Great. Tell me. Call the name of it. Tell me what it says. It says that the survival of a case passed a motion for a directed verdict does not mean that you can't get attorney's fees under a fee-shifting provision for a frivolous case. I'm sorry, Your Honor. It's in the brief somewhere? If it's not in the briefs, it's in the fee motion or memorandum that we filed in the district court. Maybe it doesn't insulate. Well, I'm actually not even sure about that. Your Honor. I don't think it's at least supportive. I mean, it seems to me even wrongheaded district court decisions are supportive of no fees. Well, I understand the court's point, but I don't understand why my clients, if we just assume that the district court was wrong about everything and we assume that these claims were frivolous, that they knew all along they didn't have a real claim for trade secret misappropriation and they made up the TCPA claim at the end of the trial and there was never any proof to support it. If we assume that, then what I don't understand is why my clients should have to suffer because the district court made an error. When there is a fee-shifting provision. It happens every time there's a mistake in a federal court. It does happen, Your Honor. Fees to fee. We have fee-shifting provisions for these two statutes that allow for the recovery of fees for frivolous claims. And if we're going to weigh the conduct of the parties and say, well, you should have filed a motion for summary judgment and you should have done this and you should have done that. Well, if you have to weigh that against the conduct of a party that files a knowingly frivolous claim, then why should my clients, the defendants, be the party that suffers in that equation? That doesn't seem to me to be the correct result. The party that should suffer is the party that filed the groundless lawsuit to begin with. And, you know, should we have filed a motion for summary judgment? If I had gotten in in time, I would have filed a motion for summary judgment. I'm telling you right now, the motion would have been denied. I mean, it's the same standard for the Rule 50 motion. And if the judge let this case go to the jury. I think we've plowed this ground. Let's just make sure there's not new ground. Real quick. The objectively meritless component of the fee provision, that's something that is true under Tennessee law. You determine that independent of anything the district court did. You do. And let's say the district court isn't just hypothetically, simply isn't just working hard enough to sort it all out and realize the distinction between existence and misappropriation. And it's just, you know, offering up conclusory assertions that are themselves baseless or meritless. And that's kind of what we're here to review. But, I mean, is that an affirmative defense to this sort of fee claim under Tennessee law? An affirmative defense? That the district court has made these rulings. I mean, under Tennessee law, is that an affirmative defense to the showing otherwise made of objectively meritless? If I understand the question correctly, it's the argument as well. Since the judge ruled in our favor on these issues, that means it can't be objectively meritless. Correct. That is not Tennessee law as I understand it. Are there any Tennessee cases that even look at the judge's determinations in determining objectively meritless, to your knowledge? Not that I'm aware of, Your Honor. But, I mean. But your theory is that after they won the JNOV, they should have dropped the claims. No, my theory is that they never should have filed the claims. No, but you're still saying, you're still asking for fees after the JNOV, right? Yes, Your Honor. Okay. So your theory is at that, let's just talk about that point. I agree with, I understand your earlier theory, that's where the summary judgment cutoff comes. But it doesn't seem a little counterintuitive that someone has an obligation to drop claims after winning a judgment as a matter of law motion? The court is speaking of the directed verdict motion that we made at the conclusion of the trial? Yes. Well, I mean, from a practical standpoint, no, of course they wouldn't. They're not obligated to drop their lawsuit. Why not?  Yeah, but your view is that they can still be sanctioned despite wrong-headed district court decisions. Yes, that is my view exactly, Your Honor. They go forward at their peril. If that's not the case, then the fee-shifting provisions don't apply when the district court screws up. And there's no law out there, no cases or anything to support that position. I mean, it doesn't seem to me that the fact that the district court made wrong decisions should mean that we don't get attorney's fees. It's just kind of a common sense thing. I mean, how many people do you know in their whole practice lifetimes dropped claims? Let's go to summary judgment. Dropped claims. They're plaintiffs. They want to go to a jury. The judge says you can go to a jury, rightly or wrongly. And they drop their claims after the judge says you can go to a jury? I'll grant you that theoretically one can still have fees, but just as a matter of common sense, that's just not what lawyers do. Well, that's true, but sometimes they do. It's not what parties do. Parties are the ones that have the choice. Your Honor, I've been in lawsuits where I've gone and argued a motion for summary judgment on both sides, and the judge will deny the motion but will make other rulings or make comments that make it clear that the motion is being, you know, that the case is surviving by a thread, and if something doesn't turn out the way that you're thinking it's going to turn out, then you're going to lose. And if you know where that road is leading, then you'll dismiss the case. Did that happen here? That didn't happen here. That's your point. That's my exact point. When Mr. Monoweck's 30B6 deposition was taken, for example, and he could not identify a trade secret that had been misappropriated. He said he didn't even know what they took with them. He couldn't identify any trade secret that had been misappropriated. They had a duty then to voluntarily dismiss this claim. Of course, they never should have brought it to begin with, but it should have been clear to anybody after that deposition that they did not have a claim for trade secret misappropriation. And should a motion for summary judgment have been filed? Probably, but would it have been granted? I mean, he denied the Rule 50 motion. If I could just say one more thing before I sit down. Maybe with one or two dependent clauses. When Ms. Hyde was up, the issue was raised about the discretionary nature of the decision. And even if the district court finds that there's a frivolous claim, it's still discretionary whether or not to award attorney's fees. And I would submit that in practice that doesn't happen. And maybe if you read the statute that way, it technically could. But the important thing in this case to consider is that that's not what this judge did. The district court didn't rule that these claims are frivolous, but I'm not going to award attorney's fees anyway. The district court ruled that there was evidence of misappropriation. Note that there was evidence that they had access to owner information, which, by the way, is not a trade secret under Tennessee law. So I think, I don't even know if your friend on the other side actually addressed this. This is, so I think we got the point. We did. It was the third point in the opening remarks. Okay. Keep going if you wanted to keep going. No, I'm okay. I'm finished unless the court has any questions. I don't have questions. Okay. Thanks to both of you for your briefs, for answering our many questions. We'll work through this case. Thank you. Case will be submitted. The clerk may recess court.